IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

**DALE P. FIELD, JR.,**

  **Plaintiff,**

v.            CIVIL ACTION NO. 1:16CV149
                (JUDGE KEELEY)

**DAVID A. FARMER.**
**In his official capacity as**
**Director of West Virginia Regional**
**Jail Authority;**
**MEDICAL, INC.,**
**SCOTT VILLERS, in his official capacity**
**Acting Administrator Tygart**
**Valley Regional Jail;**
**GARY MOHR, in his official capacity as**
**Director of Ohio Department of**
**Rehabilitation and Corrections;**
**TIM BUCHANAN, in his official capacity as Warden, Noble Correctional**
**Institution;**
**JOHN DOE (1), Transportation Sergeant**
**JOHN DOE (2); JOHN DOE (3);**
**JANE DOE (1); and JANE DOE (2).**

  **Defendants.**

## REPORT AND RECOMMENDATION

This matter comes before the undersigned magistrate judge pursuant to an Order of Referral (ECF No. 4), entered on July 6, 2016.

### I. Background

On July 5, 2016, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendants. On July 7, 2016, the plaintiff was granted leave to proceed *in forma pauperis*, and summonses were sent to the United States Marshal Service for delivery to the defendants. Defendants PrimeCare Medical Inc., Scott Villers, David A. Farmer, Gary Mohr, and Tim Buchanan were served

summonses and were returned executed on August 9, 2016.  However, the summons for the defendant John Doe 1 Transportation Sergeant, was returned unexecuted. Defendant Farmer and Defendant Villers each filed a motion to dismiss on August 5, 2016.  PrimareCare Medical Inc. (hereinafter "PrimeCare Medical), filed a motion to dismiss on August 8, 2016, and Defendants Mohr and Buchanan filed a joint motion to dismiss on the same date.   Roseboro Notices were issued on August 10, 2016.  The plaintiff filed responses to the Farmer and Villers dismissal motions on August 17, 2016, and to Buchanan, Mohr and PrimeCare Medical on August 31, 2016.

## II.     Contention of the Parties

**A.     The Complaint**

In his complaint, the plaintiff maintains that the defendants were negligent with his medical care.  Plaintiff alleges he sustained injuries to his left knee while incarcerated at Tygart Valley Regional Jail (hereinafter "Tygart Valley") in Belington, West Virginia, under the supervision of the defendant, David A Farmer, Director of the Regional Jail Authority, and Scott Villers, Acting Administrator of Tygart Valley.  Plaintiff maintains that after sustaining the injuries he was escorted to the jail's medical bay, operated by the defendant PrimeCare Medical, who failed to administer proper care and treatment of his injury as ordered by an orthopedic surgeon and physical therapists.

Specifically, Plaintiff alleges after being seen in the medical bay, he was referred to the emergency room (hereinafter "ER") at Davis Medical Center in Elkins, West Virginia, where the ER doctor recommended that he see an "orthopedic surgeon, A.S.A.P." (ECF 1 at 2).  Plaintiff contends his appointment with the orthopedic surgeon was delayed for a month as a result of Tygart Valley rescheduling the appointment

multiple times. He further alleges, that he did not receive the prescribed amount of physical therapy as ordered by the surgeon.

Plaintiff indicated he was transferred from Tygart Valley to the Correctional Reception Center in Orient, Ohio, under the supervision of Defendant Gary Mohr, Director of Ohio Department of Rehabilitation and Corrections, and thereafter, to Noble Correctional Institution (hereinafter Noble Correctional) in Caldwell, Ohio. Plaintiff contends after being examined at both institutions, he was allowed to continue to use the knee brace prescribed by the orthopedic surgeon, but states while at Noble Correctional he did not receive any additional medical services from Noble Correctional despite the "compromised use of his left knee, constant pain and [impeded] mobility."

In summary, Plaintiff alleges that the treatment he received from Defendants was negligent and below the medical standard of care expected of medical professionals. Plaintiff further alleges Defendants violated his constitutional protections against cruel and unusual punishment and are consequently liable for his injuries. For relief, Plaintiff seeks damages in the amount of $175,000.

**B.     Motions to Dismiss by Defendant Farmer and Villers.**

Defendants Farmer and Villers assert several reasons to support dismissal of Plaintiff's civil action. First, Defendants argue the Court lacks subject matter jurisdiction over the case, arguing Plaintiff has failed to allege a substantial federal claim. (ECF Nos. 10,12). Second, Defendants argue Plaintiff has not satisfied the pre-suit notice or certificate of merit requirements mandated by W.Va. Code § 55-17-3(a)(1) or W.Va. Code § 5507B-6. Id. Third, Defendants argue they are entitled to immunity pursuant to the Eleventh Amendment of the United States Constitution and Article VI, § 35 of the

3

Constitution of West Virginia. Id. Fourth, Defendants argue Plaintiff has failed to plead Defendants were personally involved in any wrongful or unlawful conduct. Id. Fifth, Defendants argue Plaintiff has failed to exhaust his administrative remedies. Id.

**C.     Motion to Dismiss by Defendant Mohr and Buchanan**

In support of their Motion to Dismiss, Defendants Mohr and Buchanan highlight that they are Ohio prison officials who are being sued in their official capacities, and contend Plaintiff's civil action, as to them, should be dismissed for the following three reasons: (1) Plaintiff fails to state a claim upon which relief may be granted, (2) the Court lacks jurisdiction and (3) venue is improper. (ECF No. 14)

**D.     Motion to Dismiss by PrimeCare Medical Inc.**

In support of its motion, PrimeCare Medical argues Plaintiff's claim should be dismissed for the following five reasons: Plaintiff has failed to (1) state a claim upon which relief can be granted, (2) exhaust his administrative remedies and (3) comply with the Notice of Claim and Screening Certificate of Merit requirements of the West Virginia Medical Professional Liability Act. Additionally, (4) PrimeCare Medical is not a "person" subject to suit under 42 U.S.C. § 1983, and (5) Plaintiff's claims do not meet the legal threshold for a viable claim under either the Eighth or Fourteenth Amendments to the United States Constitution.

**E.     Plaintiff's Responses**

Plaintiff reiterates his arguments and attempts to refute Defendants' on the same.

## III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a

5

complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

## IV.     Analysis

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or

6

permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[1]

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions

---

[1] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner=s daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997)

7

which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)). Here, even assuming that the plaintiff has a serious medical condition, the defendants who have been served, are due to be dismissed for the reasons more fully discussed below.

### A. Exhaustion of Remedies

As an initial matter Defendants contend Plaintiff's case should be dismissed arguing that he failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. §1997e(a). The PLRA requires a prisoner confined in jail, prison, or other correctional facility to exhaust all administrative remedies before bringing an action under § 1983. 42 U.S.C. §1997e)(a). A prisoner is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). Former prisoners that have been released are no longer considered to be detained or incarcerated under the PLRA. Cofield v. Bowser, 247 Fed. Appx. 413, 414 (4th Cir. 2007)(unpublished). Thus, whether the §1997e(a) exhaustion requirement applies depends on the plaintiff's status at the time he filed the lawsuit. Id.

Failure to exhaust administrative remedies is an affirmative defense, and the burden is on the defendant to show that it applies. Holland v. Prince George's County, Md., 2011 WL 530559, at *3 (D. Md. Feb. 8, 2011) (citing *Jones v. Black,* 549 U.S. 199, 211–212, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)). Here, Defendants have failed to

present any evidence showing Plaintiff was a prisoner at the time he filed his complaint. Plaintiff maintains he was not incarcerated at the time his complaint was filed. Furthermore, the address listed on his complaint included a private street address rather than the address of the correctional facility. Because Plaintiff was no longer a prisoner at the time he filed his action, the PLRA is not applicable. Accordingly, the complaint should not be dismissed for failure to exhaust administrative remedies.

**B.    PrimeCare Medical Inc.**

The plaintiff alleges that the defendant(s) have deprived him of his rights and raises a claim under 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution of federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982). However, it is clear that PrimeCare is not a "person" for purposes of 42 U.S.C. § 1983, and there are no allegations against PrimeCare involving policies or customs of deliberate indifference. Accordingly PrimeCare is due to be dismissed as a defendant.

**C.     David A. Farmer, Scott Vickers**

Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001)(internal citation omitted).  Therefore, in order to establish liability under §1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988).  Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown.  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).  *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a §1983 case.  Rizzo v. Good, 423 U.S. 362 (1976).

In the case at bar, the plaintiff neither makes any specific allegations against David Farmer or Scott Villers nor asserts that either was personally involved in any violation of his constitutional rights.  Rather, it appears that the plaintiff merely names them in their official or supervisory capacities as the administrators of the RJA and TVRJ, respectively. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent."  Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted).  Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166.  In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation.  Id. (citing Monell v.

New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)). In this case, the plaintiff fails to assert that a policy or custom of the Regional Jail Authority or Tygart Valley played a part in the alleged violation of his constitutional rights.

Regarding supervisory capacity, there is no *respondeat superior* liability under § 1983. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928(4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, supra. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v Washington Metropolitan Area Transit Authority Fisher v Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.) cert.denied, 513 U.S. 813 (1994).

"Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or

constitutional injury." Id. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id. The plaintiff makes no allegations in his complaint which reveals the presence of the required elements for supervisory liability against Farmer or Villers. Consequently, the undersigned finds that the plaintiff has failed to state a claim against David A. Farmer and Scott Villers,[2] and they should be dismissed as defendants in this action.

**D.  Gary Mohr and Tim Buchanan**

In the plaintiff's complaint, he includes as defendants two Ohio prison officials, Tim Buchanan, the warden of Noble Correctional Institution and Gary Mohr, the director of the Ohio Department of Rehabilitation and Corrections.  For a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied. "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).  The West Virginia Long-arm Statute is contained in W.Va. Code §56-3-33(a)[3].

---

[2]To the extent that the plaintiff may be asserting that Farmer and Villers were deliberately indifferent to his needs by denying his administrative grievances, that claim is without merit for two reasons: (1) there is no documentation that Plaintiff filed any administrative grievances against Farmers and Villers and (2) that is not the type of personal involvement required to state a claim.  See Paige v. Kuprec, 2003 W.L. 23274357*1 (D. Md. March 31, 2003).

[3] This section provides as follows:

(a) The engaging by a nonresident, or by his or her duly authorized agent, in any one or more of the acts specified in subdivisions (1) through (7) of this subsection shall be deemed equivalent to an appointment by such nonresident of the Secretary of State, or his or her successor in office, to be his or her true and lawful attorney upon whom may be served all lawful process in any action or proceeding against him or her, in any circuit court in this state, including an action or proceeding brought by a nonresident plaintiff or plaintiffs, for a cause of action arising from or growing out of such act or acts, and the engaging in such act or acts shall be a signification of such nonresident's agreement that any such process against him or her, which is served in the manner hereinafter provided, shall be of the same legal force and validity as though such nonresident were personally served with a summons and complaint within this state:

The Southern district of West Virginia has succinctly stated as follows regarding personal jurisdiction:

> "[b]ecause the West Virginia Long-arm statute is coextensive with the full reach of the due process, it is unnecessary . . . to go through the normal two-step formula for determining the existence of personal jurisdiction. Rather the statutory inquiry necessarily merges with the Constitutional inquiry. In re Celotex Corp., 124 F.3d 619, 627-28 (4th Cir. 1997).
>
> To satisfy constitutional due process, the defendant must have sufficient minimum contracts with West Virginia so that requiring it to defend its interest here would not "Offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L.Ed. 95 (1945). Those minimum contacts necessary to confer jurisdiction are limited to those activities by which a person "purposely avails itself of the privilege of conducting activities within the forum state." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) see also In re Celotex, 124 F.3d at 628 (the minimum contacts must be "purposeful"). This occurs where the contacts "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L.Ed. 2d 528 (1985)(emphasis in original), or where the defendant's efforts are "purposefully directed" at the state. Id at 476 105 S. Ct. 2174.

Vass v. Volva Trucks North America, Inc., 304 F. Supp. 2d 851, 854 (S.D.W.Va. 2004).

---

(1) Transacting any business in this state;

(2) Contracting to supply services or things in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he or she regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consume or be affected by the goods in this state: *Provided,* That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Having an interest in, using or possessing real property in this state; or

(7) Contracting to insure any person, property or risk located within this state at the time of contracting.

With regard to the actions of BOP personnel at Department of Rehabilitation and Corrections and Noble Correctional, Plaintiff has failed to assert any contact by them with the State of West Virginia, much less the minimum contact necessary to satisfy the Due Process Clause. Thus, based on the information contained in the Complaint, the Court cannot exercise personal jurisdiction over any BOP personnel at Ohio Department of Rehabilitation and Corrections or Noble Correctional, because any action they took appears not to have occurred anywhere in West Virginia, and there is no indication that these defendants had any contact with the State of West Virginia. Accordingly, both the Gary Mohr, Director of the Ohio Department of Rehabilitation and Corrections and Tim Buchanan, Warden of Noble Correctional, should be dismissed as defendants in this matter.

**E.     Defendants John Doe, (1) John Doe (2), John Doe (3), Jane Doe (1) and Jane Doe (2)**

Plaintiff names John Doe (1), John Doe (2), John Doe (3), Jane Doe (1) and Jane Doe (2) in his Complaint. (Complaint, ECF No. 1 at 1). However, Plaintiff only mentions the defendants in the style of the case, and does not allege any wrongdoing or assert any claim against them. Accordingly, the undersigned recommends that Defendants John Doe (1), John Doe (2), John Doe (3), Jane Doe (1) and Jane Doe (2) be dismissed from the Complaint (ECF No. 1) in accordance with 28 U.SC. §1915(e) for failure to state a claim upon which relief can be granted against these defendants.

## V.     Recommendation

For the reasons stated, the undersigned recommends that the Motions to Dismiss [ECF Nos. 10, 12, 14, and 16] be **GRANTED**, and the plaintiff's complaint, as it

relates to PrimeCare Medical, David Farmer, Scott Vickers, Gary Mohr, Tim Buchanan, Inc., John Doe (1), John Doe (2), John Doe (3), Jane Doe (1) and Jane Doe (2) be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. Section 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to all counsel of record via electronic means.

DATED: December 16, 2016

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE